IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 2:15-CR-17-MHT |
| | ) | |
| MICHAEL ALBERT FOCIA | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendant's "Affidavit in Support of a Motion Challenging Search and Seizure Warrant Dated October 31, 2014" (Doc. 72). Consistent with the relief Defendant explicitly requests in the motion, the court has construed the document as a motion to suppress evidence seized from his vehicle at the time he was arrested on January 5, 2015.[1] The Government has responded (Doc. 88) to the motion and, on April 7, 2015, the undersigned conducted an evidentiary hearing on the motion at which the Government presented testimony and evidence in support of the lawfulness of the search and seizure described in Defendant's pleading. The matter is now ripe for report and recommendation to the District Judge. Upon consideration of Defendant's motion, the

[1] Despite the caption of the document, the "Facts" section in the document describes Defendant's actions and eventual arrest on January 5, 2015. Def.'s Aff. (Doc. 72) at 2-3. Defendant specifically requests that the court "suppress the cell phone jammer obtained unlawfully from Michael, and return said evidence because it is not unlawful to possess." *Id.* at 3. Confusingly, Defendant's pleading does not endeavor to explain why "it is not unlawful to possess" the item he wants suppressed, and nor does the pleading present any argument or "facts" pertaining to the search warrant he purports to challenge in the caption of the pleading. Nevertheless, given the focus of the "Facts" which Defendant argues warrant suppression, and the specific item which he requested be suppressed, the court has construed the motion as described in the text of this Recommendation.

Government's response, and the evidence and testimony adduced at the evidentiary hearing presided over by the undersigned, the Magistrate Judge RECOMMENDS that the motion to suppress be DENIED.

## I. FINDINGS OF FACT[2]

On January 5, 2015, Sergeant Wesley Richerson of the Montgomery County Sheriff's Department was assigned to "take a small tactical element out to the Seminole Drive Area in Arrowhead to assist on an eviction that was being taken—being executed." Tr. (Doc. 97) at 5, line 18-22. According to Sgt. Richerson, the subject of the eviction was Defendant's mother. *Id.* at line 24. Sgt. Richerson and the tactical squad were assigned to assist with the eviction because of communications from Defendant to the Sheriff's Department's civil division concerning the purported illegality of the eviction and Defendant's representation that "they were not willingly going to leave the residence." *Id.* at 6, line 2-6. Sgt. Richerson parked his unmarked Department-issued Chevrolet Tahoe in the vicinity of the home on Seminole Drive, near the intersection with Natchez Drive, as part of the tactical perimeter. *Id.* at line 6. Numerous marked Sheriff's Department vehicles were parked in front of the residence on Seminole Drive. *Id.* at 7, line 15-16.

Sgt. Richerson had received information that Defendant "was known to drive a silver Infiniti" without a valid license plate,[3] and that Defendant did not possess a valid,

[2] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

current driver's license. *Id.* at 7, line 1-4. At approximately 1:25 p.m., Sgt. Richerson "observed a silver Infiniti turn onto Seminole Drive approaching the residence where the eviction was approximately a block and a half away." *Id.* at line 4-7. Sgt. Richerson had previously seen photographs of Defendant and, as the silver Infiniti approached, he observed Defendant driving the vehicle and that Defendant was the sole occupant. *Id.* at line 18-20. After stopping on Seminole, Defendant turned onto Natchez Drive and drove away from Seminole Drive. *Id.* at line 20-21. Sergeant Richerson observed a "paper dealer drive-off tag" on Defendant's vehicle, *id.* at 8, line 11, and, believing he had probable cause to stop Defendant's vehicle to investigate his improper tag, and also cognizant of information that Defendant did not possess a valid driver's licesnse, Sergeant Richerson turned onto Natchez and began to follow Defendant. *Id.* at 8, line 2-4.

Sergeant Richerson followed Defendant as he drove at low speeds through the Arrowhead neighborhood. Sergeant Richerson observed Defendant to approach and then abruptly abort a turn onto Ocala Drive. *Id.* at line 23-25. Defendant made numerous right and left hand turns as he drove through the neighborhood. *Id.* at 9, line 11-15. At some point, Defendant turned again onto Seminole Drive, at which time, intending to make a stop of Defendant's vehicle, Sgt. Richerson activated his "emergency blue

---

[3] Specifically, Sgt. Richerson had been advised that Defendant appeared to have a dealer drive-off tag, but that he had been in possession of the vehicle for more than the requisite twenty days in which Alabama law permits drivers to employ such tags prior to registering the vehicle. *See* Tr. (Doc. 97) at 43, line 8-19; *id.* at 46, line 11-18. Defendant offered no evidence at the hearing indicating that he purchased the vehicle within twenty days of January 5, 2015.

lights." *Id.* at 10, line 2.[4] After Sgt. Richerson activated his lights, he made eye contact with Defendant in Defendant's mirrors and further observed Defendant throw his hands in the air. *Id.* at line 12-15; *id.* at 80, line 2-6 & 21-22. Defendant refused to stop his vehicle. *Id.* at 10, line 12-15.

As Defendant continued driving through the neighborhood, Sgt. Richerson observed Defendant "reaching all inside his vehicle," which Sgt. Richerson considered suspicious. *Id.* at 11, line 4-7. He continued to make eye contact with Defendant several times. *Id.* at line 10-11. Sgt. Richerson pulled alongside Defendant and observed Defendant through his "side window." *Id.* at line 11-12. Sergeant Richerson observed Defendant approach and abort several more turns during the pursuit. *Id.* at 14-15. When Defendant arrived at the intersection with McLemore Drive he stopped his vehicle. Sergeant Richerson observed a line of approaching cars on McLemore and, assuming Defendant had finally stopped because of Sgt. Richerson's pursuit, began to exit his vehicle. *Id.* at 12, line 3-5. As Sgt. Richerson exited his vehicle, Defendant "accelerated in front of the line of traffic" onto McLemore. *Id.* at line 5-7.[5] Sergeant Richerson resumed his pursuit onto McLemore. The line of traffic Defendant placed between himself and Sgt. Richerson yielded to Sgt. Richerson's vehicle and he soon was again directly following Defendant. *Id.* at line 9-18.

---

[4] Sergeant Richerson testified that his vehicle has "blue lights 360 degrees, all the way around the vehicle." Tr. (Doc. 97) at 37, line 1-2. Specifically, in the front grille, there are "four clusters of lights with two LEDs in each cluster," for a total of eight LEDs in the front. *Id.* at line 20-22. The vehicle also has blue light clusters, with LEDs, to the rear on the passenger and driver's side, as well as six clusters of blue lights on the rear. *Id.* at line 23-25 through p. 39, line 1-6. Sergeant Richerson's vehicle is not equipped with a siren. *Id.* at 50, line 13.

[5] *See also* Tr. (Doc. 97) at 55, line 19-24.

Prior to reaching Atlanta Highway, Defendant turned into a parking lot between Atlanta Highway and a row of retail stores. *Id.* at 13, line 1-6. From the time Sgt. Richerson activated his emergency lights to the time Defendant turned into the parking lot, Sgt. Richerson estimates the two traversed approximately 4.25 miles. *Id.* at 11, line 18-19.[6] At this point, considering Defendant's gestures, eye contact, the number of turns he made with Sgt. Richerson in pursuit, aborted turns on several streets, and his actions prior to turning onto McLemore, Sgt. Richerson believed he had probable cause to arrest Defendant for attempting to elude. *Id.* at 12, line 10-22. Defendant finally stopped in the parking lot as marked patrol cars converged in the parking lot in response to Sgt. Richerson's calls for backup during the pursuit and, specifically, a marked canine unit moved to block his path. *Id.* at 14, line 2-12; *id.* at 59, line 14-23.

Sergeant Richerson exited his vehicle and began approaching Defendant's vehicle. He observed Defendant "moving drastically inside the vehicle. He was reaching and moving all around." *Id.* at 14, line 19-21. Seargeant Richerson drew his weapon and commanded Defendant to show his hands. *Id.* at line 21-23. Sergeant Richerson observed Defendant "screaming and hollering." *Id.* at line 25. He also observed a box cutter and an "electronic device," which he thought to be an explosives detonating device, *see id.* at 74, line 6-9 & 19-21, near the front center console and a "thigh rig" for carrying multiple pistol magazines. *Id.* at 15, line 5-9; *id.* at 70, line 1-3. Sergeant Richerson observed Defendant moving and gesturing inside the vehicle, and

[6] Sergeant Richerson used both Google Maps and physically re-drove the route to arrive at this estimate. Tr. (Doc. 97) at 51, line 7-24.

intermittently showing his hands upon the officers' commands and reaching around inside the vehicle, including in the direction of the box cutter which Sgt. Richerson had observed. *Id.* at 66, line 10-15, *id.* at 67, line 15-19.

Defendant eventually exited his vehicle and, with the doors locked, tossed his keys back in the vehicle through the window opening. *Id.* at 19, line 5-9. While not attacking the deputies, Defendant physically resisted their attempt to place him in handcuffs. *Id.* at line 15-19. Deputies patted down Defendant while he was standing next to his vehicle and recovered a pocket knife. *Id.* at line 22-24. During the pat down, two other deputies opened Defendant's car door and conducted a "wingspan search" of the front passenger area and recovered the electronic device Sgt. Richerson had observed, the box cutter, and some Glock magazines. *Id.* at 20, line 9-12; *id.* at 68, line 10-14; *id.* at 73, line 6-8. Sergeant Richerson resolved that Defendant would be arrested for attempting to elude, *id.* at 21, line 10-14, and further issued citations to Defendant for not having a valid license plate and driving while suspended or revoked. *Id.* at 22, line 23-25.

Because Defendant was being arrested, deputies were required by Sheriff's Department policy to have his vehicle towed incident to the arrest. *Id.* at 26, line 8-11. This necessitated an inventory search of the vehicle prior to towing. *Id.* at 12-17. Sergeant Richerson remained on the scene at the time Defendant's vehicle was towed. *Id.* at 30, line 17-18. Items of perceived evidentiary or pecuniary value, like the black electronic device and Defendant's firearm magazines and accessories, whether recovered during the "wingspan search" or the inventory search of Defendant's vehicle, were segregated from ordinary items, which were inventoried but remained in the vehicle

during the towing process, and were retained by Sgt. Richerson and "placed in evidence at the Montgomery County Sheriff's Office." *Id.* at 29, line 4-14.

## II. DEFENDANT'S ARGUMENT

Defendant's motion does not present a cogent challenge to any particular aspect of the stop, arrest, search, or seizure events described in the above recitation of facts. He claims he was "unlawfully and forcibly kidnapped and falsely imprisoned by a dishonorable Montgomery County Deputy Sheriff Richerson without warrant, probable cause of a felony, an exigent circumstance, or a breach of the peace." Def.'s Mot. (Doc. 72) at 2. He further claims that "Richerson then unlawfully searched and seized Michael's Car again, without probable cause of a crime, stole items unrelated to anything for which he could possibly have stopped Michael." *Id.* The remainder of Defendant's motion mostly attacks the veracity of Sgt. Richerson's report on the incident and professes his belief in a conspiracy involving the Assistant United States Attorney prosecuting this matter. *Id.* at 2-3. Based upon the limited argument in Defendant's motion, the undersigned construes his motion as articulating a challenge to Sgt. Richerson's lawful authority to pursue and stop his vehicle, as well as conduct any search of the vehicle and seize items therein.

## III. DISCUSSION

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To the extent Defendant is challenging his arrest, the Eleventh Circuit

has articulated the following principles guiding the consideration of whether an arrest is unlawful under the Fourth Amendment.

> The reasonableness of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause. *United States v. Lopez–Garcia*, 565 F.3d 1306, 1314 (11th Cir. 2009). Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime. *Id.* This Court will uphold an arrest only if objective circumstances justify it. *United States v. Jones*, 377 F.3d 1313, 1314 (11th Cir. 2004).

*United States v. Rucker*, 588 F. App'x 943, 946 (11th Cir. 2014) (unpublished decision). To the extent Defendant is challenging the warrantless search of his automobile and seizure of any items contained therein, the Eleventh Circuit has recently described three circumstances in which a search of a vehicle may lawfully proceed without a warrant as follows:

> (1) a search of a vehicle incident to a lawful arrest of a recent occupant ("search incident to arrest exception"), *see* [*Arizona v. Gant*, 556 U.S. 332, 343-44 (2009)]; (2) a search based on probable cause to believe that an operational vehicle contains evidence of criminal activity ("automobile exception"), *see United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007); and (3) an inventory search pursuant to standardized procedures ("inventory exception"), *see United States v. Khoury*, 901 F.2d 948, 957–59 (11th Cir. 1990).
>
> . . .
>
> According to the Supreme Court in *Gant*, two situations permit officers to search a vehicle incident to arrest: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; or (2) "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in the judgment)).
>
> . . .
>
> In contrast to the search-incident-to-arrest exception, the automobile exception "allows searches for evidence relevant to offenses other than the

> offense of arrest, and the scope of the search authorized is broader." *Gant*, 556 U.S. at 347.
>
> This Court has explained that the automobile exception authorizes a search of a vehicle if "(1) the vehicle is readily mobile; and (2) the police have probable cause for the search." *Lindsey*, 482 F.3d at 1293. For the mobility requirement, the car must simply be operational. *See id.*

*United States v. Alston*, 2015 WL 657854 , *2-4 (11th Cir. Feb. 17, 2015) (unpublished decision).

Considering the foregoing principles of Fourth Amendment law, the undersigned concludes that Defendant has failed to articulate any basis upon which to suppress the "cell phone jammer" seized from his vehicle on January 5, 2015. Sergeant Richerson plainly had authority to begin his pursuit of Defendant's vehicle upon confirming that Defendant did not have a proper Alabama license plate. This observation provided Sgt. Richerson with at least reasonable suspicion that Defendant was in violation of the law and, therefore, at that moment Sgt. Richerson was vested with authority to stop Defendant's vehicle and detain him for investigation of that potential offense. *See United States v. Smith*, 164 F. App'x 825, 827-29 (11th Cir. 2006) (affirming district court's conclusion that stop based on investigation of propriety of "paper dealership tag" was lawful).

Likewise, the court finds that Sgt. Richerson obtained probable cause to arrest Defendant for attempting to elude during his pursuit of Defendant through the Arrowhead neighborhood. Alabama law defines the criminal offense "Fleeing or Attempting to Elude Law Enforcement Officer" as follows:

> (a) It shall be unlawful for a person to intentionally flee by any means from anyone the person knows to be a law enforcement officer if the person knows the officer is attempting to arrest the person.
>
> (b) It shall be unlawful for a person while operating a motor vehicle on a street, road, alley, or highway in this state, to intentionally flee or attempt to elude a law enforcement officer after having received a signal from the officer to bring the vehicle to a stop.

Ala. Code § 13A-10-52. The court finds credible Sgt. Richerson's testimony that he activated his emergency lights to signal Defendant to stop his vehicle, that, after he activated his emergency blue lights, Defendant refused to stop his vehicle and continued driving for over four miles, that Defendant made eye contact with Sgt. Richerson and/or his vehicle and plainly knew that Sgt. Richerson was attempting to stop his vehicle, and that, after Defendant stopped before turning onto McLemore, he accelerated in front of oncoming traffic after Sgt. Richerson exited his vehicle. These facts are plainly sufficient to support Sgt. Richerson's belief that he had probable cause to arrest Defendant for attempting to elude. Accordingly, Defendant's arrest on this charge was not in violation of the Fourth Amendment or otherwise unlawful, and he is not entitled to suppression of any evidence on the basis of a purported unlawful arrest.

As to the search of his vehicle, and seizure of items in the vehicle, as set forth above, Defendant has not articulated in his motion any specific perceived defect other than to assert that the search was "without probable cause of a crime[.]" Def.'s Mot. (Doc. 72) at 2. The facts developed at the evidentiary hearing in this matter demonstrate that the search and seizure about which Defendant complains was lawful, and that he is not entitled to suppression of any evidence. To begin with, the only item for which

Defendant requests suppression, the electronic "cell phone jammer," was observed by Sgt. Richerson in plain view. He initially believed the item to be an explosives detonating device and, therefore, was justified in seizing the item as potential evidence of a crime.

Beyond that, the protective search of Defendant's vehicle as he was being secured, which resulted in the seizure of the jammer, was justified. In his approach to Defendant's vehicle, after a low-speed pursuit spanning several miles, Sgt. Richerson observed a box cutter, the suspicious electronic device which he feared might be a detonator, and what appeared to be an accessory for storing multiple firearm magazines. Sergeant Richerson also observed Defendant's erratic behavior, including his screaming protests of the legality of the stop, his gesturing, and his intermittent reaching around in the cabin of the vehicle even as he was ordered—at gunpoint—to show his hands. Furthermore, after Defendant exited the vehicle he locked the door and tossed his keys back into the vehicle through a window opening. Considering these circumstances, officers were amply justified in conducting a protective "wingspan search" of the passenger area of the vehicle where Defendant had been reaching, and where suspicious items or weapons had been observed, incident to the arrest to ensure officer safety as they attempted to secure Defendant next to his vehicle. *United States v. Purcell*, 236 F.3d 1274, 1277-78 (11th Cir. 2001); *Brims v. Barlow*, 441 F. App'x 674, 678 (11th Cir. 2011) ("As Barlow was checking Brims's registration, he noticed Brims moving around and reaching from one side of his vehicle to the other. Brims has not disputed that he was moving around in his vehicle. Based on his training and experience, Barlow believed that Brims may have been

trying to secure a weapon. At that point, it was lawful for Barlow to conduct a pat-down search of Brims's person and to search Brims's vehicle to ensure that Brims did not pose a threat to his safety."). Defendant has presented no evidence which would call into question Sgt. Richerson's testimony about his observations or the necessity and legality of the protective search of the vehicle conducted by the officers.[7] As such, the undersigned finds that the cell phone jammer was lawfully seized incident to the arrest of Defendant when officers recovered it during a protective search of the area accessible to him while he was being secured.[8]

[7] At the hearing, Defendant insisted that he could impeach Sgt. Richerson's testimony about where the jamming device was located by submitting a report prepared by a non-testifying officer. Tr. (Doc. 97) at 68 line 15-25. Although Defendant requested, and was granted, permission to submit any such report or other document to the court within twenty-four hours of the hearing, *see id.* at 75, line 22-25 through p.76, line 7, as of the time of this writing some three days later, he still has not submitted any additional documentation to the court. Even if Defendant had submitted such a report, it would be of limited probative value considering that the officer who completed the report did not testify at the hearing.

[8] The Government maintains that the search of Defendant's vehicle "fits squarely within the automobile exception to the rule against warrantless searches, providing an additional—and independent—basis for its constitutionality." Gov't's Resp. (Doc. 88) at 6-7. As a theoretical matter, the court does not disagree. However, the testimony at the evidentiary hearing makes clear that the item which is the subject of the instant motion, the cell phone jammer, was seized when officers conducted the "wingspan search" of the vehicle simultaneous with the pat-down and attempt to secure Defendant. *See* Tr. (Doc. 97) at 20, line 9-12. Indeed, the search was discontinued after Defendant was secured. *Id.* at 21, line 8-9. As such, and having concluded that the "wingspan search" was amply justified, the court need not determine whether the "automobile exception" provides an additional basis for uphold the search and seizure at issue. Likewise, the undersigned does not doubt that a valid inventory search of Defendant's vehicle, as was testified to have occurred in this case, would provide a separate, additional justification for the seizure of the cell phone jammer. However, for the reasons set forth in the text of this Recommendation, the undersigned need not reach that issue.

## III. CONCLUSION

For all of the foregoing reasons, the undersigned RECOMMENDS that Defendant's "Affidavit in Support of a Motion Challenging Search and Seizure Warrant Dated October 31, 2014" (Doc. 72)be DENIED.

It is further ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **April 20, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 10th day of April, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE